IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 15- |
| v. | : | DATE FILED: <u>July 16, 2015</u> |
| HERBERT SUDFELD | : | VIOLATIONS:<br>15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. |
| | : | §§ 240.10b-5 and 240.10b5-2 (securities fraud – 1 count) |
| | : | 18 U.S.C. § 1001 (making a false statement – 3 counts) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES:**

At all times material to this Information:

1. Harleysville Group, Inc. (hereinafter "Harleysville") was a subsidiary of Harleysville Mutual Insurance Company with headquarters in Harleysville, Pennsylvania. Harleysville was a publicly-traded insurance company and Harleysville stock was registered under Section 12(g) of the Securities Exchange Act of 1934 and was traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ") under the ticker symbol "HGIC." Harleysville specialized in commercial and casualty insurance policies

2. Nationwide Mutual Insurance Company (hereinafter "Nationwide"), based in Columbus, Ohio, is an insurance and financial service company, focusing on domestic property and casualty insurance.

3. The United States Securities and Exchange Commission (the "SEC") was an independent agency of the United States which was charged by law with the duty of protecting

investors by regulating and monitoring, among other things, the purchase and sale of publicly traded securities.

4. Defendant HERBERT SUDFELD was a partner in a Pennsylvania law firm (hereinafter "Law Firm"). HERBERT SUDFELD specialized in real estate, zoning and land development matters. As a partner of the Law Firm, SUDFELD shared a fiduciary duty to the Law Firm's clients.

5. At all times, defendant HERBERT SUDFELD understood the Law Firm's policies prohibiting disclosure of non-public information. Defendant SUDFELD also understood the Law Firm's prohibition on the purchase and sale of any security of a Law Firm client while Law Firm personnel possess non-public information concerning such security or client. SUDFELD also knew of the Law Firm's requirement that no personnel may purchase or sell any securities issued by a publicly traded company which is a client of the Law Firm unless the transaction has been approved by the Law Firm.

## NATIONWIDE MERGER WITH HARLEYSVILLE

6. In or about August 2011, Harleysville was in discussions with Nationwide regarding a merger deal. Nationwide was to acquire all of the publicly held shares of common stock of Harleysville for $60.00 per share in cash.

7. The merger discussions between Harleysville and Nationwide were material, non-public information.

8. On or about September 29, 2011, before the U.S. stock markets opened, the deal between Harleysville and Nationwide was publicly announced. The day prior to the public announcement of the merger between Harleysville and Nationwide, Harleysville common stock

2

traded in the range of $31.57 to $32.48 per share. Following the merger announcement, Harleysville shares rose to a high of $58.40, an 85 percent increase over the share price prior to the announcement.

9. In or about May 2012, the merger was consummated, with current shareholders of Harleysville receiving $60 per share of Harleysville common stock.

## THE SCHEME

10. From on or about September 27, 2011 to on or about September 29, 2011, in Warrington, Pennsylvania, in the Eastern District of Pennsylvania and elsewhere, defendant

### HERBERT SUDFELD

willfully, directly and indirectly, and by aiding and abetting, by the use of means and instrumentalities of interstate commerce and of the facilities of a national securities exchange, used and employed manipulative devices and contrivances in connection with the purchase and sale of securities, in contravention of the rules and regulations prescribed by the Securities and Exchange Commission, namely 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, by (a) employing a device, scheme, and artifice to defraud and (b) engaging in acts, practices and courses of dealing which would and did operate as a fraud and deceit upon persons in connection with purchases and sales of Harleysville securities.

## MANNER AND MEANS

It was part of the scheme that:

11. In or about September 2011, defendant HERBERT SUDFELD knew that Harleysville was a client of the Law Firm.

12. On or about September 27, 2011, defendant HERBERT SUDFELD learned that his

3

Law Firm partners represented Harleysville in a merger with Nationwide. Defendant SUDFELD knew the merger was not complete, but imminent. At all times, SUDFELD understood that the information about the impending merger was shared in confidence, and with the expectation that SUDFELD not risk exposing the confidence by engaging in stock trades.

13. On or about September 28, 2011, in the morning, defendant HERBERT SUDFELD, by giving direction to his stock broker, purchased 1000 shares of Harleysville stock under his wife's account.

14. On or about September 28, 2011, in the afternoon, defendant HERBERT SUDFELD, by giving direction to his stock broker, purchased 2,000 shares of Harleysville stock from his personal account.

15. At no time did defendant HERBERT SUDFELD tell his broker that he was trading on inside information or that he was not permitted to make these trades or that the Law Firm where SUDFELD was a partner was representing Harleysville in the merger.

16. Defendant HERBERT SUDFELD did not disclose his purchases of Harleysville stock to the Law Firm prior to his trades or in any way obtain approval from the Law Firm to trade in Harleysville stock. Defendant SUDFELD knew that his undisclosed purchase of Harleysville stock while in possession of material non-public information about Harleysville violated (a) the fiduciary and other duties of trust and confidence he owed the Law Firm's client, Harleysville and (b) the Law Firm's policy of not trading in securities issued by a Law Firm client without prior approval.

17. On or about September 29, 2011, Harleysville and Nationwide publicly announced their merger agreement, and Harleysville stock rose in value by approximately 85 percent over the

4

prior day's trading.

18. On or about September 29, 2011, defendant HERBERT SUDFELD sold 2,000 shares of Harleysville stock for $58.30 per share. Defendant SUDFELD also authorized the sale of 1000 of his wife's shares of Harleysville stock for this same amount. In total, SUDFELD netted personal profits of approximately $75,530 from his unlawful Harleysville trades.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2.

## COUNT TWO

**THE GRAND JURY FURTHER CHAGES THAT:**

1. Paragraphs 1 through 9 and 11 through 18 of Count One are incorporated here.

2. On or about March 6, 2012, in the Eastern District of Pennsylvania, defendant

## HERBERT SUDFELD

in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States Department of Justice, knowingly and willfully made a false material statement.

3. Agents of the FBI were investigating the insider trading activity described in Count One of this Indictment. A material question in this inquiry was whether defendant HERBERT SUDFELD, possessing non-public information of a Law Firm client, purchased or sold Harleysville stock.

4. With respect to these material matters, defendant HERBERT SUDFELD stated that he was not aware of the Harleysville stock transactions until several days to a week afterwards.

5. These statements were false, as defendant HERBERT SUDFELD then knew, as explained in the incorporated paragraphs of Count One of this Indictment.

In violation of Title 18, United States Code, Section 1001.

## COUNT THREE

THE GRAND JURY FURTHER CHAGES THAT:

1. Paragraphs 1 through 9 and 11 through 18 of Count One are incorporated here.

2. On or about March 6, 2012, in the Eastern District of Pennsylvania, defendant

**HERBERT SUDFELD**

in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States Department of Justice, knowingly and willfully made a false material statement.

3. Agents of the FBI were investigating the insider trading activity described in Count One of this Indictment. A material question in this inquiry was whether defendant HERBERT SUDFELD, possessing non-public information of a Law Firm client, purchased or sold Harleysville stock.

4. With respect to these material matters, defendant HERBERT SUDFELD stated that he told his broker that he could not be involved in trades of Harleysville stock due to his position at his law firm.

5. These statements were false, as defendant HERBERT SUDFELD then knew, as explained in the incorporated paragraphs of Count One of this Indictment.

In violation of Title 18, United States Code, Section 1001.

## COUNT FOUR

THE GRAND JURY FURTHER CHAGES THAT:

1. Paragraphs 1 through 9 and 11 through 18 of Count One are incorporated here.

2. On or about March 6, 2012, in the Eastern District of Pennsylvania, defendant

### HERBERT SUDFELD

in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States Department of Justice, knowingly and willfully made a false material statement.

3. Agents of the FBI were investigating the insider trading activity described in Count One of this Indictment. A material question in this inquiry was whether defendant HERBERT SUDFELD, possessing non-public information of a Law Firm client, purchased or sold Harleysville stock.

4. With respect to these material matters, defendant HERBERT SUDFELD stated that he did not discuss the Harleysville trades with his broker until after they were completed.

5. These statements were false, as defendant HERBERT SUDFELD then knew, as explained in the incorporated paragraphs of Count One of this Indictment.

In violation of Title 18, United States Code, Section 1001.

A TRUE BILL:

_____
GRAND JURY FOREPERSON

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY

8